CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 1 9 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

MARSHALL SHELTON, JR., )
      Plaintiff, )
         )
v.          )    Civil Action No. 7:06-cv-00528
         )
SUPERINTENDENT RONALD MATTHEWS, )
et al.,     )
      Defendants. )   By: Hon. Michael F. Urbanski
         )   United States Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Marshall Shelton, Jr. ("Shelton"), an inmate proceeding pro se, filed the instant

civil rights action pursuant to 42 U.S.C § 1983, with jurisdiction vested under 28 U.S.C. § 1343.

Shelton alleges that while incarcerated at the Albemarle Charlottesville Regional Jail ("Jail") the

defendants[1] failed to place him in proper protective custody and refused to give him access to

medical care.[2] By Order entered November 17, 2006, all dispositive matters in this action were

referred to the undersigned to submit proposed findings of fact and a recommended disposition.

This matter is before the court on defendants' motion to dismiss. The court notified

Shelton of defendants' motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975), and advised him that his failure to reply to the defendants' motion may result in dismissal

and/or summary judgment being granted for the defendants. Shelton did not file a response.

---

[1] By Orders entered November 17, 2006, and March 15, 2007, all claims against Albemarle Charlottesville Regional Jail Authority ("ACRJA"), Albemarle Charlottesville Regional Jail Board ("ACRJB"), Officer Jones, and Officer Crowe were dismissed. Thus, this court will only consider Shelton's claims as to Superintendent Matthews ("Matthews") and Correctional Officer Burgess ("Burgess").

[2] In his original complaint, Shelton raised a myriad of other claims; however, by Order entered September 15, 2006, these claims and all requests for declaratory judgment as well as preliminary and permanent injunctive relief were dismissed. Accordingly, the only claims which remain pertain to the aforementioned violations of Shelton's Eighth Amendment rights and his claim for damages for the same.

However, as the time allotted for any further response has expired, this matter is ripe for disposition.

Upon review of the record, the undersigned finds that Shelton failed to properly exhaust his claims pursuant to 42 U.S.C. § 1997e(a). Regardless, had Shelton exhausted his claims, the undersigned finds that Shelton's allegations fail to present an issue of constitutional magnitude. Accordingly, the undersigned recommends that defendants' motion to dismiss be granted and Shelton's complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.

Shelton alleges in his complaint that on August 14, 2005, he helped to thwart an "attempted take-over" of and "escape" from the Jail.[3] Because of his efforts, he alleges that other inmates threatened to kill him, necessitating his placement in protective custody. However, in his amended complaint, Shelton states that Matthews "placed plaintiff in protective custody that is totally different from other inmates in protective custody," such that "any number of inmates and others" had "access to the area." Shelton specifically alleges that Burgess allowed the same inmates who had previously threatened to harm him enter the protective custody unit on a daily basis to throw feces in his face. Shelton also claims that he was "almost stabbed" on three occasions because Burgess allowed other inmates into his cell, but that the assaults were prevented by two other correctional officers. Shelton further claims that all of the medical requests he submitted subsequent to these confrontations were destroyed by Burgess and other correctional officers, and medical personnel were not informed of these incidents.

---

[3] The defendants note in their brief that Shelton was not even present at the Jail on August 14, 2005, as he had already been transferred from the Jail into a Department of Corrections facility.

Additionally, Shelton claims that because he was not provided medical care, he developed "brown and black spots on his face" which "may never disappear." Shelton further alleges that Matthews ignored his complaints and grievances regarding the aforementioned incidents. Shelton argues that these actions constitute "cruel and unusual punishment in violation of the Eighth Amendment" and the "tort of aiding and abiding under the law of Virginia,"[4] and he seeks damages in the amount of $325,000.00 for the "physical and emotional injuries" allegedly sustained.

## II.

In their motion to dismiss, defendants argue that Shelton failed to exhaust his administrative remedies with respect to all claims raised. Further, the defendants argue that had Shelton properly exhausted his claims, his allegations fail to state a claim on which relief can be granted. Finally, the defendants argue that should the court determine that the defendants violated Shelton's constitutional rights, they are entitled to qualified immunity.

## III.

Defendants argue that Shelton failed to properly exhaust all available administrative remedies before filing this action.[5] The undersigned warned Shelton in an Order dated September 9, 2006, that the court would not file his complaint until Shelton documented that he had exhausted all available administrative remedies as to each of his claims. Shelton responded

---

[4] Because the undersigned recommended that the claims over which the court has original jurisdiction be dismissed, the undersigned also recommends that the court decline to exercise supplemental jurisdiction over Shelton's state law claim. See 28 U.S.C. § 1367(c).

[5] The defendants explain in their motion to dismiss that the Jail has a two-step grievance procedure. At level one, an inmate states his complaint and receives a response from the appropriate Jail official. At level two, an inmate who is not satisfied with the level one response can appeal his grievance to the Jail Superintendent. The level two response is final and completes the grievance procedure.

3

in his amended complaint that he "directs this Court['s] attention to the attached grievance[s] on the original complaint as proof that he exhausted all available remedies." Shelton did not respond with any additional information as to his exhaustion of administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available administrative remedies before bringing a claim under § 1983. 42 U.S.C. § 1997e(a); Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) (stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005). Furthermore, prisoners must not just initiate timely grievances, but must also make a timely appeal of any denial of relief through all levels of available administrative review. Woodford, 126 S.Ct. at 2387 (holding that the PLRA requires "proper exhaustion" of institutional administrative remedies before filing any federal suit challenging prison conditions); Porter v. Nussle, 534 U.S. 516, 532 (2002) (stating that the PLRA applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth v. Churner, 532 U.S. 731, 739 (2001) (finding that the PLRA requires administrative exhaustion prior to the filing of a federal civil rights suit even if the form of relief the inmate seeks is not available through exhaustion of administrative remedies).

To establish exhaustion of administrative remedies, Shelton submitted three grievances dated January 14, 2005, January 19, 2005, and February 5, 2005, with his original complaint. In the January 14, 2005 grievance, Shelton complained that other inmates were allowed access to his protective custody unit and that an inmate threatened him. The Jail official indicated that a note would be placed in the log book to inform correctional officers that inmates should be

4

prohibited from entering the segregation unit unless previously authorized. Shelton indicated

that he was satisfied with the response given, and he did not appeal. Therefore, the undersigned

finds that the issues raised in Shelton's January 14, 2005 grievance are not properly exhausted.[6]

In his grievance dated January 19, 2005, Shelton appealed to the Superintendent. Even

so, the undersigned finds that Shelton failed to properly exhaust these claims because he failed to

allege sufficient detail in the grievance. See McGee v. Fed. Bureau of Prisons, et al., 118 Fed.

---

[6] The undersigned notes that he has previously relied on persuasive authority concerning claims of medical treatment in which an inmate need not seek further review or appeal a grievance which has been resolved in the inmate's favor. See Abney v. McGinnis, 380 F.3d 663, 669 (2nd Cir. 2004) (holding that failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances related to necessary medical care, but the relief that he was supposed to obtain was never forthcoming and the prison did not provide a viable mechanism for appealing implementation failures). However, the undersigned finds that this authority can be distinguished from the instant case. The Second Circuit Court of Appeals explained the limitations of Abney in Ruggiero v. County of Orange, 467 F.3d 170, 177 (2nd Cir. 2006).

> In Abney, a prisoner filed a formal grievance regarding the inadequacy of his orthopedic footwear on four occasions. Despite the fact that each of his grievances was decided in his favor, his defective footwear was never remedied. The district court dismissed the prisoner's case for failure to exhaust. Abney, 380 F.3d at 666. We reversed on the basis that "DOCS regulations fail to provide inmates with further procedural recourse where the superintendent breaches [his duty to verify compliance with grievance decisions favorable to the inmate]." Id. at 668. Thus, when the prison failed to implement the administrative decision, the prisoner's only option was to file a new grievance, which he did repeatedly. Id. at 669. We held that where prison regulations fail to provide a remedy for implementation failures, prisoners who receive a favorable outcome to their initial grievance that remains unimplemented have fully exhausted their available remedies. Id.

Thus, the "standard established in Abney is not whether the prisoner has a *reason* to pursue administrative remedies; it is whether such remedies are *available* to him." Ruggiero, 467 F.3d at 177; Booth v. Churner, 532 U.S. 731 (2001). No such remedies were available in Abney because "there was no way to challenge a failure to implement," as Abney received a favorable disposition but learned, after the deadline for an administrative appeal passed, that the favorable ruling would not be implemented. Ruggiero, 467 F.3d at 177. In the instant case, not only was a remedy available to Shelton, but there was no failure on the part of the prison to implement the favorable response of the grievance. Shelton does not allege that the prison failed to implement their administrative decision of filing a note in the log book to direct the correctional officers. Moreover, Shelton does not allege that unauthorized prisoners continued to be allowed access to his segregation unit. Shelton could have filed a grievance if unauthorized prisoners continued to have access to his segregation unit notwithstanding the prison's decision to file an instructive note. In fact, he filed no more grievances on this issue. Shelton's other grievances concerned feces and urine being thrown on him, not that other inmates who had previously threatened him were being allowed access to his segregation unit. Shelton did not file numerous grievances only to have the requested relief promised but never implemented. Thus, this situation is not the "never-ending cycle of grievances" warned against in Abney. See also Ollis v. Mitchell, No. 1:04CV219-1-MU, 2006 WL 278139 (W.D.N.C. Feb. 3, 2006) (holding that plaintiff's acceptance or agreement, as indicated by his signature, with the Step One response, did not constitute exhaustion for filing a federal claim as plaintiff's acceptance of the resolution of his grievance concluded the matter).

5

Appx. 471, 476 (10th Cir. 2004) (holding that to have properly exhausted a claim an inmate must have filed grievances with sufficient detail to alert prison officials of the possible constitutional claims which are now alleged as a basis for relief). In this grievance Shelton complained that he had "[unintelligible] thrown in [his] face and chest" and that he "wasn't treated." Shelton conceded that he "ask[ed] the nurse to treat" him, but she said that "there [was] nothing [that] she could do." The level one response stated: "Mr. Shelton understands there is no treatment needed but he wishes to appeal it to the superintendent so that he will know what his family is talking about." The level two response by the superintendent stated: "Mr. Shelton you were seen at medical. You were explained the protocol for this situation." Shelton did not disclose who threw the substance at him nor did he complain that during the incident he was otherwise threatened or harmed. Also, Shelton did not allege that the incident occurred because correctional officers failed to protect him and/or because correctional officers encouraged other inmates to assault him. Finally, even though Shelton stated in his grievance that he wanted medical attention, he failed to allege any injury whatsoever and he noted that the nurse informed him that there was no treatment available or necessary. Because Shelton failed to allege sufficient detail in his grievance related to the claims which are now alleged as a basis for relief, the undersigned finds that this grievance is insufficient to properly exhaust those claims.

Shelton's February 5, 2005 grievance concerned an incident where Shelton's cell door was opened by Burgess while another inmate's cell door was open and another incident where Shelton was allegedly hit in his face with urine from another inmate that Burgess allegedly allowed on the block. Shelton indicated that the relief he sought was Burgess' transfer from the unit. The level one response stated that "officer post assignments are not grievable." Shelton

6

did not appeal the February 5, 2005 grievance, presumably because he was released to the Department of Corrections on the same date that a response was generated. Shelton fails to allege what harm or injury he received from either incident and also fails to suggest that either of these inmates were inmates that had threatened him in the past. Because Shelton did not pursue this grievance through all available levels of appeal and also because Shelton fails to allege sufficient detail in this grievance related to the claims which are now alleged as a basis for relief, the undersigned likewise finds that this grievance is inadequate to have properly exhausted the instant claims.

Accordingly, the undersigned finds that Shelton failed to satisfy the requirements of 42 U.S.C. § 1997e(a) as to all of his claims and, therefore, recommends that his claims be dismissed.

## IV.

A petition may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) if it is clear from the petition that the plaintiff is not entitled to relief. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Adkins, 487 U.S. 42 (1988). However, a complaint filed by an inmate may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) if the complaint is "frivolous," "malicious," or "fails to state a claim upon which relief can be granted." In deciding a motion to dismiss, the court must construe all facts in the light most favorable to the plaintiff and must assume all facts alleged in the complaint to be true. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Then, the motion to dismiss should be granted only if it is clear that, as a matter of law,

7

no relief could be granted under any set of facts consistent with the allegations.  Id.; see Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978).

## A.  Failure to Protect

Had Shelton properly exhausted his claims, his allegations that prison officials failed to protect him from other inmates are insufficient to state a claim of constitutional magnitude and, thus, must be dismissed.  Generally, prison officials have a duty to protect prisoners from violence at the hands of other inmates.  Farmer v. Brennan, 511 U.S. 825, 833 (1994).  However, not every incident of violence subjects prison officials to liability under the Eighth Amendment.[7] Id. at 834.  Instead, the inmate must show that prison officials were deliberately indifferent to a substantial risk of serious harm; mere negligence as to an inmate's safety is insufficient.  Farmer 511 U.S. at 828, 835; Estelle v. v. Gamble, 492 U.S. 97, 104 (1976).  A prison official violates the Eighth Amendment when (1) the deprivation was, objectively, sufficiently serious; and (2) he has a sufficiently culpable state of mind.  Farmer, 511 U.S. at 834; Short v. Smoot, 436 F.3d 422 (4th Cir. 2006).  Furthermore, a de minimis injury cannot support a claim under § 1983.  See Strickler v. Waters, 989 F.2d 1375, 1382 (4th Cir. 2003) (holding that unless plaintiff has suffered serious or significant injury as a result of the alleged actions or conditions, he "simply has not been subject to cruel and unusual punishment within the meaning of the [Eighth] Amendment"); Edison v. Hudson, No. 96-6220, 1996 WL 426860 (4th Cir. July 31, 1996) (citing Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994) (en banc)) (finding that de minimis

---

[7]  Shelton does not allege whether he was convicted at the time of the alleged conduct that underlies his claims. Regardless, whether the inmate has been convicted or is a pretrial detainee, allegations of failure to protect or inadequate medical treatment are analyzed under the deliberate indifference standard of the Eighth Amendment.  See Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Westmoreland v. Brown, 883 F. Supp. 67, 72-6 (E.D. Va. 1995).

8

injuries do not provide a basis for § 1983 claim of failure to protect ); Ellis v. Bass, No. 91-2423, 1992 WL 369484 (8th Cir. Dec. 16, 1992) (de minimis injuries found inadequate to satisfy threshold injury requirement for constitutional violation in failure to protect claim).

Shelton not only fails to present evidence of a significant physical injury, he fails to present evidence of any injury at all resulting from the allegedly unconstitutional conditions.[8] Shelton merely alleges that he was "almost stabbed" on "three occasions" and that he has "brown and black spots" on his face that "may never disappear." There is no basis to suggest that the feces allegedly thrown at Shelton would result in permanent facial discoloration. In an Order dated September 14, 2006, the undersigned allowed Shelton the opportunity to correct noted deficiencies and particularize the facts of his claim. The Order specifically directed Shelton to elaborate on the feces and "other stuff" thrown at him and any injuries that he may have incurred at the Jail. Simply put, Shelton's amended claims still do not rise to the level of constitutional violations under any of the circumstances alleged. See Shakka v. Smith, 71 F.3d 162, 167-68 (4th Cir. 1995) (no injury or risk of serious future harm from denial of shower for three days after other inmates threw urine and feces at plaintiff, where plaintiff had been given water and cleaning materials after incident); Johnson v. Hannah, 421 F. Supp. 2d 604 (W.D.N.Y. 2006) (finding that prisoner's Eighth Amendment claim not supported where prisoner was splattered with a few drops of feces thrown by another inmate, and was promptly taken to the shower, where he was allowed to rinse off); Smith v. Edwards, No.

---

[8]  Because Shelton fails to support his claims of "physical injuries," the undersigned need not consider his claims of "emotional injuries." See 42 U.S.C. § 1997e(e) (providing that no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury); Perkins v. Dewberry, No. 05-6303, WL 1793484 (4th Cir. July 28, 2005) (finding that de minimis physical injuries cannot support a claim for mental or emotional injury).

9

06-1259, 2006 WL 3512837 (E.D. La. Dec. 5, 2006) (holding that prisoner did not sustain physical injury when feces and urine were thrown on him by another inmate).

Accordingly, the undersigned finds that Shelton's alleged injuries are, at most, <u>de minimis</u> and, thus, his claims are not actionable under the Eighth Amendment. Therefore, the undersigned recommends that these allegations be dismissed.

## B. Denial of Medical Care

Shelton alleges that he was not provided adequate medical care after a "foreign substance" was thrown in his face. To establish a claim of denial of adequate medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate deliberate indifference to a serious medical need. <u>Estelle v. Gamble</u>, 492 U.S. 97, 104 (1976); <u>Rish v. Johnson</u>, 131 F.2d 1092, 1096 (4th Cir. 1997). To constitute deliberate indifference, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990). A medical need is "serious" if it is one "'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Shelton v. Angelone</u>, 183 F. Supp. 2d 830, 840 (W.D. Va. 2002) (quoting <u>Cox v. District of Columbia</u>, 834 F. Supp. 439, 441 (D.D.C. 1992)). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985); <u>Estelle</u>, 429 U.S. at 105-6. Moreover, claims of medical judgment are not subject to judicial review. <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir. 1975).

10

Shelton fails to allege facts sufficient to demonstrate that he sustained any injury at all, much less that he had a serious medical need. As noted above, merely being exposed to human waste does not necessarily imply that an inmate suffered serious harm or had a serious medical need. Shelton does not claim that he is in pain nor does he allege that he has developed any other actual health problems from his brief exposure. Accordingly, the undersigned concludes that Shelton did not suffer any serious harm necessitating medical attention.

Furthermore, even assuming Shelton had a serious medical need, he has not demonstrated that defendants were deliberately indifferent. Shelton concedes that following his exposure to human waste he was examined by the institutional nursing staff and that the nurse determined that he did not need any treatment. Shelton does not identify what further treatment he now needs. Accordingly, the undersigned finds that although Shelton may be dissatisfied with the treatment he received, this amounts to nothing more than a disagreement between medical staff and an inmate as to a proper course of treatment, and does not amount to a constitutionally cognizable claim.

Finally, Shelton does not allege direct participation in, or interference with, his medical treatment by either Matthews or Burgess.[9] See Boblett v. Angelone, 957 F. Supp. 808, 813 (W.D. Va. 1997) (citing Miltier, 896 F.2d at 854-55) (holding that correctional officials are entitled to rely on the expertise of their institutions' medical staff and can only be held liable for

---

[9] Shelton does allege that his submitted medical requests were destroyed by several correction officers, including Burgess. He claims that because of this destruction, medical personnel were not informed of the incidents and, therefore, he was not "medically treated." However, in his January 19, 2005 grievance, Shelton refers to the correctional officer taking him to get medical treatment and the nurse's inability to treat him. This written statement by Shelton directly contradicts his claim that medical personnel were not informed of these alleged incidents. See United States v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)) (finding that in the event of a conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails).

11

inadequate medical treatment if they interfered with the medical staffs' treatment or were aware

that the staff was providing grossly inadequate care and tacitly authorized the provision of such

care); see also Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1133, 1142

(4th Cir. 1982) (citing Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977)) (holding that vicarious

liability cannot be imposed under 42 U.S.C. § 1983 unless defendants are shown to have

participated directly in the alleged deprivation of rights); Ross v. Reed, 719 F.2d 689, 698 (4th

Cir. 1983) (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978))

(finding that respondeat superior liability has no place in § 1983 jurisprudence).

Based on the foregoing, the undersigned finds that Shelton's claim amounts to nothing

more than an allegation of a disagreement between patient and medical personnel regarding the

proper course of diagnosis or treatment, which is not actionable under the Eighth Amendment.

Accordingly, the undersigned recommends that these claims be dismissed.

## V.

Because the undersigned concludes that Shelton's allegations fail to state a claim on

which relief can be granted, the defendants' qualified immunity defense will not be addressed.

## VI.

For the reason stated above, the court finds that Shelton failed to exhaust all available

administrative remedies before filing this civil action. Furthermore, the undersigned finds that

had Shelton properly exhausted his claims, he fails to raise an issue of constitutional magnitude.

Accordingly, it is recommended that the defendants' motion to dismiss be granted and that

Shelton's complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The clerk is directed to immediately transmit the record in this case to the Honorable

Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a certified copy of this Report and Recommendation to Plaintiff and all counsel of record.

Entered this 19th day of March, 2007.

Michael F. Urbanski
United States Magistrate Judge